**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-13-00198-TUC-JAS (BGM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| 5.62 Acres of Land, More or Less, Situate in Santa Cruz County, State Arizona; Landmark Title Assurance Agency of Arizona, An Arizona LLC Under Trust 18223-T; et al., | |
| Defendants. | |

Currently pending before the Court are the Government's Motion *in Limine* to Exclude Defendants' After Sales and Listings (Doc. 71); Motion to Exclude Defendants' Claim of Lost Profits (Doc. 72); Motion *in Limine* to Exclude Non-Compensable Severance Damages (Doc. 73); and Motion *in Limine* to Exclude Impact Opinions of Defendants' Experts Peter Drake and Jim Sanders (Doc. 74) and Defendants' Motion *in Limine* to Exclude the Testimony of Thomas Baker and Alternatively His Non-Expert Survey and Paired Sale Analysis of Cell Towers (Doc. 75); Motion *in Limine* to Exclude Any Evidence, Testimony or Argument Regarding Nominal Use (Doc. 76); and Motion

*in Limine* to Exclude Any Evidence, Testimony or Argument Regarding Title 8 U.S.C. § 1357 (Doc. 77).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.    Oral argument was held on January 29, 2016, and the matter taken under advisement.  Minute Entry 2/01/2016 (Doc. 112).  The Magistrate Judge recommends that the District Court deny the motions.

## I.      BACKGROUND

This case is one of several land condemnation cases filed in this district related to Government projects which include "construct[ing], install[ing], operat[ing], and maintain[ing] a border security tower, along with all necessary and related structures and roads, designed to help secure the United States border within the State of Arizona." Compl. (Doc. 1), Schedule "B" – Public Purpose.  The property that the Government seeks to condemn includes a perpetual tower site easement, perpetual road and utility easements, and a temporary construction easement.  *See* Compl. (Doc. 1), Schedule "C" & Schedule "E."  The property at issue is located in Santa Cruz County, Arizona.  *See id.*

## II.     LEGAL STANDARDS

### A.      *Expert Witness Testimony*

Rule 702, Federal Rules of Evidence, governs expert witness testimony, and provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Regarding the bases of an expert witness's opinion testimony, Rule 703, Federal Rules of Evidence provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

When an objection to an expert witness's testimony is raised, the Court must act as a "gatekeeper" prior to permitting the jury to hear the evidence.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  In performing its role as "gatekeeper" the Court is required to assess whether the witness is qualified to offer the opinions that he or she is espousing, and whether those opinions are relevant and reliable.  *Daubert*, 509 U.S. at 592, 113 S.Ct. at 2796; *Kumho Tire*, 526 U.S.

- 3 -

at 141 & 152, 119 S.Ct. at 1171 & 1176.  The proponent of the expert bears the burden of proving admissibility.  *Lust By and Through Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

The *Daubert* court delineated a non-exhaustive list of factors for consideration by courts assessing expert witnesses.  *Daubert*, 509 U.S. at 593–94, 113 S.Ct. at 2796–97. This list includes (1) whether the theory or technique relied on by the expert witness can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate of error; and (4) whether the theory or technique is "generally accepted" by the relevant scientific community.  *Id.*  This inquiry is a "flexible one."  *Id.* at 594, 113 S.Ct. at 2797.   Furthermore, "[u]nlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions including those that are not based on firsthand knowledge or observation."  *Id.* at 592, 113 S.Ct. at 2796 (*citing* Fed. R. Evid. 702 & 703).

**B.     *Eminent Domain***

"The landowner [has] the burden of establishing the value of the property subject to condemnation."  *United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir. 1980) (citing *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943)).  "When the government takes only part of a person's property, and when the value of the remainder depreciates because of the proposed use on the condemned parcel, the owner is entitled to compensation both for that which is physically appropriated and for the diminution in value to the non-condemned property."  *United States v. 33.5 Acres of Land*, 789 F.2d 1396, 1399 (9th Cir. 1986) (citations omitted).

- 4 -

The landowner's compensation for the diminution of value of the remainder of the property is referred to as "severance damages."  *United States v. Miller*, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943).  "Severance damages are compensable only if the landowner incurs a direct loss reflected in the marketplace that results from the taking[.]"  *33.5 Acres of Land*, 789 F.2d at 1398.  In determining fair market value, "[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered[.]"  *Olsen v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934); *see also United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 630, 81 S.Ct. 784, 789, 5 L.Ed.2d 838 (1961) (referring to the "highest and best use" of the servient land).

## C.    *Just Compensation*

"Just compensation for condemned property is measured generally by the fair and reasonable market value of the property or interest taken."  *429.59 Acres of Land*, 612 F.2d at 462.  "Market value is the price which a reasonable seller who desires to sell but is not required to sell would demand for the property and the price which a reasonable buyer who desired to buy but was not required to buy would pay for the same, assuming a reasonable time for negotiations and explorations of alternatives.  *Id.* (citations omitted). "In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining."  *Olsen v. United States*, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (citations omitted).  "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be

reasonably probable should be excluded from consideration for that would be to allow

mere speculation and conjecture to become a guide for the ascertainment of value—a

thing to be condemned in business transactions as well as judicial ascertainment of truth."

*Id.*  "[E]vidence of reasonable probability of uses [is] admissible and the weight of such

evidence [is] to be considered by the trier of fact."  *United States v. 174.12 Acres of

Land*, 671 F.2d 313, 316 (9th Cir. 1982).  "Even if it were proper for a judge to determine

the highest and best use, the finder of fact is free to determine the value of the property

based upon an alternate use."  *87.98 Acres of Land*, 2005 WL 2810641, *9 (citing

*Phillips v. United States*, 243 F.2d 1, 3–4 (9th Cir. 1957)).  "The guiding principle of just

compensation is reimbursement to the owner for the property interest taken."  *United

States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d

838 (1961).  "He is entitled to be put in as good a position pecuniarily as if his property

had not been taken.  He must be made whole but is not entitled to more."  *Olsen*, 282

U.S. at 255, 54 S.Ct. at 708.

### D.   Appraisal Methodology

The Ninth Circuit Court of Appeals "generally recognizes three appraisal

methodologies in ascertaining fair market value: '(1) Comparable sales; (2) the income or

capitalization of income; and (3) the reproduction cost at the time of taking, less

depreciation.'"  *United States v. 99.66 Acres of Land*, 970 F.2d 651, 655 (9th Cir. 1992)

(citations omitted).  "Courts occasionally allow valuation testimony on a fourth method

called either the lot method or the developer's residual approach."  *Id.*  Additionally, in

assessing the value of a property, "[w]hile the contract price of comparable land is

directly admissible to prove market value, offers to sell or purchase property are plainly inadmissible for that purpose." *United States v. 10.082 Acres of Land*, Case No. CV-05-00363-PHX-NVW, 2007 WL 962846, at *8 (D. Ariz. Mar. 27, 2007) (citing *United States v. 10,031.98 Acres of Land,* 850 F.2d 634, 637 (10th Cir.1988)); *see also Sharp v. United States*, 101 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211 (1903) (affirming court's refusal to allow Plaintiff to testify regarding offers he had received to purchase the property). "[I]f there are no comparable sales, then other methods must be resorted to in order to ascertain market value." *United States v. 100 Acres of Land*, 468 F.2d 1261, 1265 (9th Cir. 1972).

### E.   Lost Profits

"Since 'market value' does not fluctuate with the needs of condemnor or condmenee but with general demand for the property, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings." *United States v. Petty Motor Co.*, 327 U.S. 372, 377–78, 66 S.Ct. 596, 599–600, 90 L.Ed. 729 (1946) (citations omitted). "In respect of each item of property that value may be deemed to be the sum which considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy." *Olsen*, 292 U.S. at 257, 54 S.Ct. at 709.

. . .

. . .

. . .

1

2

3

### III.   ANALYSIS

####   A.   *Government's Motion* **in limine** *to Exclude Defendants' After Sales and Listings*

The Government argues that Defendants' appraisal expert witness Jim Sanders's opinions should be struck to the extent that they inappropriately rely on listing data (offers-to-sell) and are not sufficiently similar or proximate to the subject property. Govt.'s MIL re After Sales and Listings (Doc. 71).  As an initial matter, the Government argues that the "after" sales relied on by Mr. Sanders are not valid comparables because they are located in Cochise, not Santa Cruz, county.  *Id.* at 10–12.   The Government further argues that this data is also too remote in time as the sales range from 2005–2009. *Id.*  Finally, the Government objects to Mr. Sanders's reliance on listing data to indicate the value of the subject property.  *Id.* at 13–14.  Because such offers-to-sell are the basis for Mr. Sanders's "after" opinion of value, the Government asserts that his opinion must be excluded as a matter of law.  *Id.* at 16–17.   At oral argument, Plaintiffs' counsel agreed that listing data are not an appropriate basis for value, but asserted that Mr. Sanders did not rely on listing data for that purpose.  Plaintiffs further assert that the Government's motion goes to weight, not admissibility.

As an initial matter, there is no serious challenge to Mr. Sanders's qualification as an expert witness.  As such, the Court finds that Mr. Sanders is a qualified expert in this case.  The Court further finds that Mr. Sanders's use of properties located in Cochise County rather than Santa Cruz County is without moment.  Mr. Sanders sought to compare vacant ranch lands in Southern Arizona, and to that extent the properties relied

upon were appropriate.  Furthermore, although the sales data seems temporally distant, whether or not there are more recent sales or Mr. Sanders has additional justification for his choice of sales, are issues that can be explored upon cross-examination.

Of greater concern, despite defense counsel's assertion that Mr. Sanders did not rely on listing data to arrive at market value for the property, a review of Mr. Sanders's report leaves this issue unresolved.  *See* Defs.' Response to MIL re Listing Data (Doc. 85), Exh. "B."  To the extent that Mr. Sanders's multiple regression analysis required additional data points in order to interpolate a result, and whether or not that was appropriate, or if he used listing data for another purpose entirely, are all subjects that can be explored upon cross-examination.[1]  Additionally, the trial court may issue a limiting instruction to the jury, if it is deemed necessary.  Ultimately, this Court recommends that the Government's motion (Doc. 71) be denied, with leave to re-urge at trial.

### B.    *Government's Motion* **in limine** *to Exclude Defendants' Claim of Lost Profits*

The Government seeks to exclude any evidence of "lost profits," including "lost rents" and "lost revenues," by Defendants.  *See* Govt.'s MIL re Lost Profits (Doc. 72). The Government claims that Defendants are not entitled to recover consequential damages as a result of this taking.  As such, "even if the United States' taking frustrated the Defendants' plans to lease the tower site on their property, any ensuing losses are not compensable."  *Id.* at 6.  The Government further states that "[l]osses personal to Defendants, or any landowner, are not part of just compensation."  *Id.* at 7.  The

---

[1] This list is meant to be illustrative, not exhaustive.

- 9 -

Government further asserts that Mr. Sanders's analysis improperly takes into account the government's demand for the subject property.  Govt.'s Reply re MIL re Lost Profits (Doc. 99).

The Defendants assert that the prospect for a market rent on the land taken is "directly admissible on the question of just compensation[.]"  Defs.' Response re MIL re Lost Profits (Doc. 86) at 6.  As such, contrary to the Government's assertion, Defendants urge that they do not seek to recover business losses, but rather are using the lease information to establish the value of the property.  *Id.* at 1.  Defendants further point out that although the Government seeks to rely on properties adjoining cell towers for market valuation comparisons, it seeks to preclude the landowner from using the effect of cell tower leases in their calculation of the underlying land value.  *Id.* at 7.

The Government relies on *Omnia Commercial Co. v. United States*, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), as "the seminal contract takings ruling[.]"  Govt.'s MIL re Lost Profits (Doc. 72) at 6.  *Omnia* involved the condemnation of a "steel company's entire production of steel plate for the year 1918."  *Id.* at 507, 43 S.Ct. at 437.  The steel company had already entered into a contract with a private party for the purchase of a large quantity of steel plate, and could not fulfill that contract as a result of the taking.  *Id.*  The Court determined that the Government did not appropriate the contract, rather it rendered performance an impossibility.  *Id.* at 511, 43 S.Ct. at 438.

Here, Defendants are not seeking payment for the contract or any potential contract, but rather are using the data to show that the market value of the land is greater than that suggested by the government.  To the extent that enhanced value due to leases

- 10 -

would be assessed by a buyer of the property in an arms' length transaction and is not

wholly speculative, such information is appropriate.  The Defendants cannot, however,

rely on "an element of value which the government has created."  *United States v.*

*Weyerhaeuser Co.*, 538 F.2d 1363, 1367 (9th Cir. 1976) ("fair market value would not

include that value arising from the government's activity").  Thus, to the extent that the

Government would be the only potential leasee of the property, it is inappropriate for the

Defendants to use that lease to enhance the property's value.  *See id.*  As such, the

Government's motion will be denied.  To the extent necessary, the trial court can issue an

appropriate limiting instruction.

### C.      *Government's Motion* **in limine** *to Exclude Non-Compensable Severance Damages*

The Government asserts that "Defendants' experts conflate this project (road and

utility easements that will facilitate construction and operation of security towers) with

the border fence project and other general activities being undertaken by the Border

Patrol."  Govt.'s MIL re Non-Compensable Severance Damages (Doc. 73) at 5.  As such,

the Government argues that "[t]he jury in its determination of just compensation should

not consider any diminution caused by the United States' use of property acquired from

other landowners."  *Id.*  The Government stresses that the tower site project at issue in

this case is separate and distinct from the border fence project and any impact on the land

based upon the Government's police powers.  As such, these last are simply unrelated to

this case.  Defendants counter that their "case does not turn on a finding of damages

caused by the Project outside the boundaries of the property[.]"  Defs.' Response re MIL

re Non-Compensable Severance Damages (Doc. 87) at 2.  Rather, Defendants assert that the tower activity and location of the access road negatively impact their ability to redevelop the site.

It is well-established law that "the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking."  *Campbell v. United States*, 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328 (1924).  Here, however, the border tower security project is completely within the bounds of the property at issue.  As Defendants point out, there is no *Campbell* finding necessary.  Moreover, to the extent that other factors inform the assessment of fair market value, they are admissible.   The Government is only responsible for severance damages "if the landowner incurs a direct loss reflected in the marketplace that results from the taking[.]"  *33.5 Acres of Land*, 789 F.2d at 1398.  The Court finds a jury instruction, however, will sufficiently protect the Government's interests.  As such, the Government's motion (Doc. 73) is denied.

### D.    *Government's Motion* **in limine** *to Exclude Impact Opinions of Defendants' Experts Peter Drake and Jim Sanders*

The Government seeks to exclude the testimony of Defendants' experts Peter Drake and Jim Sanders.   *See* Govt.'s MIL re Drake & Sanders (Doc. 74).   The Government argues that Mr. Drake's opinions are merely speculative and based on assumptions, which warrant exclusion.  *Id.* at 7–12.  More specifically, the Government asserts that many of the issues that Mr. Drake identifies as "adverse impacts" of the

border security tower project, actually existed in the "before" condition of the property. *Id.* at 7–8. The Government further argues that Mr. Drake's failure to appreciate the issues that impacted the "before" condition of the property, results in opinions regarding the "after" condition that are merely speculative. *Id.* at 7–12. As such, the Government asserts that Mr. Drake's testimony should be excluded. Additionally, because Defendants' appraisal expert Mr. Sanders relies on Mr. Drake's report in forming his opinions, the Government argues that Mr. Sanders's testimony should be excluded as well. *Id.* at 13–16. The Defendants assert that Mr. Drake is a highly qualified expert. Defs.' Response re MIL re Drake & Sanders (Doc. 88) at 1–2. Defendants further assert that the opinions of Mr. Drake and Mr. Sanders properly assess the impact of the border security tower project on the landowners' ability to develop the property for its highest and best use. *Id.* at 3–7.

The Court finds that Mr. Drake and Mr. Sanders are properly qualified as expert witnesses. The Court further finds that the Government's motion goes to weight, not admissibility. To the extent that Mr. Drake's assumptions do not account for impacts that exist in both the "before" and "after" or may be speculative, the Government may cross-examine him on those issues. Moreover, the presence of the tower, border patrol agents, or other equipment, and any negative impact stemming from that presence, even if strictly from an aesthetic point of view, would be items which a willing buyer would contemplate in valuing a property for purchase. Finally, to the extent necessary, the trial court can issue a limiting instruction to the jury. As such, the Court recommends that the Government's motion (Doc. 74) be denied.

### E. *Defendants' Motion* in Limine *to Preclude the Testimony of Thomas Baker, and Alternatively his Non-Expert Survey and Paired Sale Analysis of Cell Towers*

Defendants seek to exclude the testimony of the Government's appraisal expert Thomas Baker.  First, Defendants assert that Mr. Baker's reliance on older residential lots is misplaced, as the tract at issue is vacant land.  Defs.' MIL re Baker (Doc. 75) at 8–9.  Additionally, in assessing the residential properties, Mr. Baker interviewed brokers and homebuyers and his report contains an assessment of the homebuyers "feelings" about the property.  *Id.* at 8–12.  Defendants further argue that Mr. Baker's questions to the buyer were non-neutral.  Defs.' Reply (Doc. 101) at 4.  Defendants assert that to the extent that Mr. Baker's opinions are based on hearsay, they are inadmissible.  Defs.' MIL re Baker (Doc. 75) at 6.  Defendants further allege that Mr. Baker was required to consider "willing sellers" in assessing market value, which he did not do.  *Id.* at 11.  Finally, Defendants' assert that residential properties in proximity to a cell tower are not comparable to the vacant land under a border security tower that is at issue in this case.  *Id.* at 12–13.

The Government asserts that Mr. Baker's analysis is based on "sound appraisal methodology."  Govt.'s Response to MIL re Baker (Doc. 83) at 3.  The Government further asserts that courts have permitted exceptions to hearsay testimony where it forms the basis of an appraiser's opinion.  *Id.*  Mr. Baker has been an appraiser for over thirty-six (36) years and holds designations with the Appraisal Institute based on his experience with the valuation and evaluation of all types of real property, as well as his ability to provide services relating to residential property.  *Id.* at 4.  The Government argues that

"verification and market-participant interviews should not be excluded from the jury's consideration under the theory that they are hearsay." *Id.* at 6.  The Government asserts that interviews with market-participants properly form the basis of an appraiser's opinions and "verify data concerning market conditions and the circumstances of sales." *Id.* at 7.  The Government further asserts that Defendants' objection goes to weight, not admissibility of Mr. Baker's opinions.  The Government also argues that Mr. Baker's paired-sales analysis technique was an appropriate methodology to assess potential impact "a border security tower would have on the market value of vacant and residential land."  Govt.'s Response to MIL re Baker (Doc. 83) at 9.

The Court finds Mr. Baker is qualified to be an expert.  The Government asserts that Mr. Baker's reliance on market participants is proper.  Govt.'s Response to MIL re Baker (Doc. 83) at 3.  In support of this assertion, it provides excerpts from "The Appraisal of Real Estate, a leading text of the appraisal industry, recogniz[ing] this process as essential to appraisal practice." *Id.*  Here, Mr. Baker's reliance on interviews with brokers is acceptable.  To the extent that his reliance on interviews with buyers, without more, is questionable is an issue that can be explored by Defendants on cross-examination.  The Court further finds that whether or not Mr. Baker's paired-data analysis is unreliable based on the comparables chosen, also goes to weight, not admissibility.  Again, any perceived deficiencies can be explored during cross-examination.  Furthermore, the trial court can issue a limiting instruction, if necessary.  Accordingly, Defendants' motion (Doc. 75) is denied.

. . .

1
2

    **F.**    ***Defendants' Motion* in Limine *to Exclude Any Evidence, Testimony or Argument Regarding Nominal Use***

3
4
5
6

Defendants seek to exclude testimony of the Government's appraisal expert Thomas Baker and retired Border Patrol Agent Shawn Palmer regarding the "minimum use of the estate condemned in this case." Defs.' MIL re Nominal Use (Doc. 76) at 1–2.

7
8
9
10
11
12
13
14
15
16
17

Defendants appear to be concerned that certain testimony by Mr. Baker and Agent Palmer will be used by the Government to limit the "taking" at issue in this case, thereby reducing the "just compensation" due Defendants. *See id.* The Government asserts that "in order to value an easement in a federal condemnation proceeding, the fact finder must consider the actual impact on the land from the use of the easement." Govt.'s Response to MIL re Nominal Use (Doc. 82) at 5–6. The Government goes on to assert that by attempting to exclude this evidence, "Defendants are preparing to argue that the jury must consider maximum injury to the remainder parcel due to the taking . . . without regard to the purpose or use for which the easements were taken." *Id.* at 7.

18
19
20
21
22
23
24
25

Here, Defendants seek to preclude evidence of "nominal" use, even though the evidence the Government will introduce appears to have a "reasonable probability" of occurring. The Court finds that as such, Defendants' arguments go to weight, not admissibility. If necessary, the trial court can issue a jury instruction to clarify the weight and/or propriety of such evidence. *See 174.12 Acres of Land*, 671 F.2d 313. The Court will deny Defendants' motion (Doc. 76).

26
27

    **G.**    ***Defendants' Motion* in Limine *to Exclude Any Evidence, Testimony or Argument Regarding Title 8 U.S.C. § 1357***

28

Defendants anticipate that:

1

2

3

[A]t the time of trial the United States will attempt to improperly devalue the land taken, and the remainder (442.78 acres) as follows:

4

5

6

1.      The Property taken is valueless in the "before" condition because by statute the United States has already confiscated it for patrol purposes. 8 U.S.C. § 1357.

7

8

9

2.      There can be no severance damages arising from the government's project because the impacts of the project are already independently authorized by the 1357 Statute, or because of earlier consensual licensed or informal entry given by the Defendant to the United States.

10

11

Defs.' MIL re § 1357 (Doc. 77) at 2.  Based on these assumptions, Defendants argue that

12

mention of § 1357 will result in a Constitutional violation in light of the zero value of the

13

land prior to the taking, thereby precluding compensation.  *See* Defs.' MIL re § 1357.  In

14

reply, Defendants analyzed a perceived reliance by the Government on § 1357, 8 U.S.C.,

15

16

as a constitutional due process and equal protection violation.   The Government,

17

however, does not intend to make either of the suggested arguments at trial.   Defs.'

18

Response re MIL re § 1357 (Doc. 84).

19

20

In light of the Government's averment that it will not make the arguments

21

suggested by Defendants, the Defendants' MIL re § 1357 is moot.   Furthermore, the

22

Court declines to order total exclusion of any mention regarding § 1357.   Section 1357

23

24

existed in the "before" condition, as well as in the "after," and may be an issue properly

25

considered by a "willing buyer" assessing the fair market value of the property.   *See*

26

*Olsen*, 282 U.S. at 255, 54 S.Ct. at 708.   Furthermore, the trial court can issue a jury

27

instruction to the extent necessary to limit the jury's consideration of evidence regarding

28

§ 1357.  Accordingly, it is recommended that Defendants' motion (Doc. 77) be denied.

## IV.    CONCLUSION

For the reasons discussed, *supra*, the motions *in limine* should be denied.  The district court judge will then have discretion to issue the appropriate limiting instruction or entertain re-urging of appropriate motions at the time of trial.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

1)    DENYING the Government's Motion *in Limine* to Exclude Defendants' After Sales and Listings (Doc. 71);

2)    DENYING the Government's Motion to Exclude Defendants' Claim of Lost Profits (Doc. 72);

3)    DENYING the Government's Motion *in Limine* to Exclude Non-Compensable Severance Damages (Doc. 73);

4)    DENYING the Government's Motion *in Limine* to Exclude Impact Opinions of Defendants' Experts Peter Drake and Jim Sanders (Doc. 74)

5)    DENYING Defendants' Motion *in Limine* to Exclude the Testimony of Thomas Baker and Alternatively His Non-Expert Survey and Paired Sale Analysis of Cell Towers (Doc. 75);

6)      DENYING Defendants' Motion *in Limine* to Exclude Any Evidence, Testimony or Argument Regarding Nominal Use (Doc. 76); and

7)      DENYING Defendants' Motion *in Limine* to Exclude Any Evidence, Testimony or Argument Regarding Title 8 U.S.C. § 1357 (Doc. 77).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  If objections are not timely filed, they may be deemed waived.  If objections are filed, the parties should use the following case number: **CV-13-00198-TUC-JAS**.

Dated this 4th day of February, 2016.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge

- 19 -